# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Case No. 10-20056-CM |
| ) | |
| TAURUS D. HOYLE ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____) | |

## **MEMORANDUM AND ORDER**

Defendant moves for a new trial because the government failed to disclose the 2009 theft conviction of an eyewitness and disciplinary letters for two officers involved in defendant's arrest and prosecution (Doc. 95). For the following reasons, the court denies defendant's motion.

**I. Factual Background**

The police arrested defendant on March 30, 2010, in the afternoon. At the time of his arrest, he did not have a firearm on his person. But police retrieved a silver revolver from underneath a car near where they arrested defendant. The government subsequently charged defendant with being a felon in possession of a firearm.

At his trial, two eyewitnesses testified that they knew defendant and that they saw him on the afternoon of March 30, 2010, with a silver revolver. The government also offered the testimony of several police officers involved in defendant's arrest and prosecution, forensic evidence establishing that the DNA profile of blood found on the gun matched defendant's DNA, and several admissions made by defendant. Defense counsel argued that none of the police officers saw defendant with a gun, that the retrieved gun was not his, and that the police planted his blood on the gun. The jury found defendant guilty on October 6, 2010.

## II. Analysis

Defendant filed the instant motion on January 16, 2013, arguing that a new trial is warranted under Federal Rule of Criminal Procedure 33 because the government suppressed three types of impeachment evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). A defendant seeking a new trial under Rule 33 based on a *Brady* violation must establish that (1) the prosecution suppressed evidence, either willfully or inadvertently, (2) the evidence is favorable to the defendant either because it is exculpatory or because it is impeaching, and (3) the evidence is material. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

**First**, defendant argues that the government suppressed a 2009 misdemeanor theft conviction for eyewitness Tyda Hall. Defendant contends that he would have used this evidence to impeach Ms. Hall's credibility on cross-examination. The government responds that it did not suppress this evidence because the conviction was unknown to it.

The government's lack of actual knowledge does not automatically protect against a *Brady* violation. Instead, the prosecution is required to search for and produce exculpatory or impeachment evidence actually or constructively in its knowledge or possession. *See Kyles v. Whitley*, 514 U.S. 419, 437–38 (1995) (explaining that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case"). This duty is designed to keep the government from intentionally keeping itself ignorant of evidence that is helpful to the defense.

In this case, Ms. Hall has a 2009 misdemeanor theft conviction in Kansas City, Kansas municipal court for shoplifting. This municipal court does not have a publically-available website. This municipal court is not a court of record, which means that there is not an official record of court hearings apart from some cursory notes. And this municipal court did not send Ms. Hall's conviction

to the local alert system. Therefore, the government's search of the local alert system did not indicate that she possessed any local convictions. In addition, the government asked Ms. Hall before trial whether she had any truth or veracity convictions, and she reported none. Based on these facts, the government did not intentionally keep itself unaware of this impeachment evidence. *See, e.g.*, *Hollman v. Wilson*, 158 F.3d 177, 181 (3d Cir. 1998) (finding no *Brady* violation where prosecutor did not find record of conviction because a clerical error gave the witness two different criminal identification numbers). The court determines that the government did not suppress this evidence.

**Second**, defendant contends that the government suppressed a disciplinary letter for Officer Mark Palmerin.[1] Defendant did not submit a copy of this letter, did not file an affidavit describing the content of the letter, and did not request discovery to obtain the letter. The only evidence before the court concerning the substance of this letter is defendant's vague statement that defense counsel learned during an interview in a different case that Officer Palmerin "received a letter of discipline concerning a matter of credibility which the [g]overnment failed to disclose prior to trial." (Doc. 95 at 2.) Based on the limited evidence before the court, defendant has not shown that this letter satisfies *Brady*. *See Douglas v. Workman*, 560 F.3d 1156, 1173 (2009) (explaining that the defendant has the burden of proving a *Brady* violation). Indeed, the court cannot even conclude that this letter exists.

**Third**, defendant alleges that the government suppressed two disciplinary letters pertaining to the honesty of Office William Saunders. Defendant explains that it would have used this evidence on cross-examination. Federal Rule of Evidence 608(b) allows a witness to be cross-examined on specific unrelated instances of conduct that reflect on the witness's character for truthfulness, subject

---

[1] Officer Palmerin did not testify at trial. Defendant suggests that—had he received the disciplinary letter for Officer Palmerin—he "would have called [Officer Palmerin] as an adverse witness, attempted to impeach his credibility, and argued that any blood found on the firearm was planted there by [him] . . . ." (Doc. 95 at 6.) The court questions whether this line of questioning would have been admissible. *See, e.g.*, 28 Charles Alan Wright & Victor J. Gold, Federal Practice and Procedure § 6119 (2d ed. 2012) (explaining that specific instances of conduct probably should not be allowed on direct examination when "under Rule 611(c), a direct examiner is permitted to conduct the questioning of adverse or hostile witnesses as if on cross-examination by using leading questions").

to Rule 403 balancing. But neither the letters nor the facts underlying the letters relate to Officer Saunders's truthfulness.

The 1996 disciplinary letter explains that Officer Saunders violated Section 3.22, which states that:

> Officers shall always maintain competence in the performance of their duties. The lack of any of the following is evidence of incompetence: courage, honesty, emotional stability, sound judgment, industry, alertness, decisiveness, power to observe, initiative, energy, intelligence and ability to get along with people.

Defendant contends that the government's failure to disclose this letter violates *Brady* because the letter recited the entirety of Section 3.22 and this section expressly includes the word "honesty." Contrary to defendant's argument, the mere inclusion of "honesty" in the letter is not dispositive of the *Brady* issue.

Section 3.22 generally deals with incompetency and then identifies varied examples of incompetent behavior, ranging from "honesty" to "energy." The court examined *in camera* the letter and a contemporaneous memorandum describing the events underlying the 1996 disciplinary letter. That memorandum explains that Officer Saunders left his assigned area for approximately thirty minutes and that this conduct "shows incompetence, <u>specifically in the areas of sound judgement [sic] and decisiveness</u>." (1996 Memorandum at 2 (emphasis in original).) Based on this review, the court is satisfied that the 1996 letter did not relate to an incident involving truthfulness. Similarly, the 2004 letter of discipline does not concern honesty. (2004 Memorandum at 2 (discussing a vehicle pursuit and stating that Officer Saunders's "competence in the area of pursuit policy is in question, in the areas of sound judgment, and decisiveness").)

The 1996 and 2004 letters are different from the 1995 letter that the court considered at the pretrial hearing. The 1995 letter explained that Officer Saunders violated Section 3.16, which states that:

-4-

> No officer shall make false reports or knowingly enter or cause to enter in any
> Department book, record or reports any inaccurate, false or improper police information
> or other material matter.

The entire focus of this section is on untruthful conduct (e.g., false reports or knowingly entering inaccurate, false, or improper information). Conversely, Section 3.22 covers honesty as well as conduct completely unrelated to truthfulness (e.g., alertness, energy, etc.). Therefore, for the Section 3.22 violations, the court had to examine the events giving rise to the disciplinary letters. Because the underlying events do not relate to Officer Saunders's character for truthfulness, this evidence is not admissible under Rule 608(b). Even if it did relate, the probative value is significantly outweighed by the danger of unfair prejudice given the difference in circumstances between the underlying actions and Officer Saunders's conduct in the present case. Because the 1996 and 2004 disciplinary letters do not relate to truthfulness and would not have been admitted, the court determines that they do not satisfy *Brady*.

For the above reasons, the court determines that defendant has not established a *Brady* violation. Even assuming that Ms. Hall's 2009 theft conviction and the disciplinary letters for both officers were suppressed, were favorable to defendant, and were admissible, defendant has not shown that this evidence in the aggregate satisfies *Brady's* materiality requirement. Evidence is material under *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985) (opinion of Blackmum, J). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.*

This court presided over the trial and had the opportunity to observe the witnesses and see all of the evidence. Ms. Hall was not the only witness linking defendant to the silver revolver. Stacey Bradley also knew defendant and testified that she saw him with a silver revolver on March 30, 2010. Indeed, Ms. Bradley's testimony corroborated several aspects of Ms. Hall's testimony and was

-5-

consistent with the recording of Ms. Hall's 911 call.  Several other law enforcement officers testified about defendant's arrest and prosecution.  Officer Gary Wansley testified that defendant had scratches on his hands, that the scratches were bleeding, and that defendant's demeanor changed once Officer Saunders found the gun.  In addition, Detective Patrick Greeno and Special Agent Christopher Concannon testified that defendant admitted he was guilty of the crimes.  In this court's view, defendant has not established a reasonable probability that the cumulative effect of the 2009 conviction and the disciplinary letters would have caused the jury to change its verdict.

**IT IS THEREFORE ORDERED** that Defendant's Motion For New Trial (Doc. 95) is denied.

Dated this 17th day of May, 2013, at Kansas City, Kansas.

<u>s/ Carlos Murguia</u>
**CARLOS MURGUIA**
United States District Judge